**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Diana Woolf, | ) | **CASE NO. 5:09 CV 1570** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Streetsboro, et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the Court upon Defendants City of Streetsboro and Wayne

Johnson's Motion for Summary Judgment (Doc. 35).  This is a Title VII sex discrimination case.

For the reasons that follow, defendants' motion is GRANTED.

## FACTS

Plaintiff, Diana Woolf, brings this action against defendants, the City of Streetsboro

(hereinafter "the City") and Wayne Johnson, the Chief of the Streetsboro Fire Department

1

(hereinafter "the Fire Department").[1]  Plaintiff, an employee of the Fire Department, alleges that she is subjected to a hostile work environment and sexual discrimination at the Fire Department.

Plaintiff joined the Fire Department as a full-time firefighter in 2003.  At the time, plaintiff was the sole female firefighter for the City, and has been the only female firefighter during her employment with the City.  Plaintiff alleges that from the moment she was hired, she has been subject to sexual harassment and sexual discrimination by her male co-workers, superiors, and subordinates, including acts of disrespect and humiliation.  She alleges that from the time she was promoted to lieutenant, she has been ignored by her subordinates, and that even though she has reported such insubordination to her superiors, no discipline has been imposed on those subordinates.  Plaintiff claims that although her superiors were aware of and witnessed such harassment and insubordination, they have ignored her complaints.  She also alleges that she was denied the opportunity to take a promotional examination for the rank of captain, and that the denial was based on her gender.  She further alleges that she has been subject to retaliation and retaliatory harassment for the complaints that she has made both to her superior officers and to the City, which have been ignored.  The specific facts relevant to plaintiff's claims are discussed in detail below in conjunction with the parties' arguments.

The amended complaint contains 14 claims for relief.  Count one is a claim for a writ of mandamus directing the City to schedule and conduct a promotional examination for the rank of captain.  Count two is a claim for a declaratory judgment that plaintiff is eligible to take the promotional examination.  Count three is a claim for sex discrimination under Ohio law.  Count

---

[1]     Plaintiff voluntarily dismissed her claims against defendant Thomas Wagner, the former mayor of the City, in his individual capacity.

2

four is a claim for sexual harassment under Ohio law.  Count five is a claim for hostile work environment under Ohio law.  Count six is a claim for retaliation under Ohio law.  There are two claims under count seven.[2]  The first is a claim for retaliatory harassment under Ohio law.  The second is aiding and abetting discrimination under Ohio law.  Count eight is a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983.  Count nine is a claim for a violation of the First Amendment under 42 U.S.C. § 1983.  Count 10 is a claim for sexual harassment under federal law.  Count 11 is a claim for hostile work environment under federal law.  Count 12 is a claim for retaliation under federal law.  Count 13 is a claim for retaliatory harassment under federal law.

Defendant now moves for summary judgment, claiming that plaintiff has not shown an adverse employment action or a hostile work environment.  Plaintiff opposes the motion.

### STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)).  *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its

---

[2]        Plaintiff has inadvertently included two claims labeled "Count VII," causing each subsequent count to be misnumbered.  The Court will address each "Count VII" separately and leave the numbering of the subsequent counts intact as plaintiff has labeled them.

3

> motion, and identifying those portions of "the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  A fact is material only if its resolution

will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden shifts to the

nonmoving party:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is a genuine issue for
> trial.  If the adverse party does not so respond, summary judgment,
> if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The court must afford all reasonable inferences and construe the evidence

in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d

146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255).  *See also United States v. Hodges X-*

*Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial

fails to make a showing sufficient to establish an essential element of his case.  *Tolton v.*

*American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

When the nonmoving party bears the burden of proof, "the burden on the moving party may be

discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of

evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  "The mere

existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must

be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57

4

F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252).  Moreover, if the evidence is

"merely colorable" or is not "significantly probative," the court may grant summary judgment.

*Anderson*, 477 U.S. at 249-50.

## ANALYSIS

Plaintiff first argues that defendants have not moved for summary judgment on her sex

discrimination claim under both Ohio and federal law.  The Court finds this argument to be

without merit.  Federal and Ohio law unlawful employment discrimination and sexual

harassment claims are analyzed under the same standard and thus need not be analyzed

separately.  *Overall v. RadioShack Corp.*, 202 Fed. Appx. 865 (6th Cir. 2006) (citing *Laderach*

*v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 828 (6th Cir. 2000)).  Accordingly, if summary

judgment is appropriate for the federal claim, it is also appropriate for the corresponding state

claim.  The Court finds that defendants have moved for summary judgment on all of plaintiff's

claims.[3]

**A.    Sex Discrimination**

The law pertaining to sexual discrimination claims is well-established.  *See McDonnell*

*Douglas Corporation v. Green*, 411 U.S. 792 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450

U.S. 248, 253 (1981).  A plaintiff may establish a *prima facie* case of sex discrimination through

---

[3]    Plaintiff also devotes a section of her brief to arguing that defendants have
failed to meet their burden in their motion for summary judgment, and that defendants'
motion "is not based upon the record at all and therefore must fail, as a matter of law."
Plaintiff's argument appears to be primarily directed at the fact that defendants filed only five
exhibits in support of their motion.  Nevertheless, the Court finds that defendants' motion was
properly supported and thus rejects plaintiff's argument.  In this case, the non-moving party
has the burden of proof and must present sufficient evidence to establish all the elements of
her case.

direct or circumstantial evidence.  In either case, a plaintiff must show an adverse employment action.  *See Mitchell v. Vanderbilt Univ.,* 389 F.3d 177, 181 (6th Cir. 2004).  To establish a claim through direct evidence, a plaintiff must present "'evidence which, if believed, requires the conclusion that [race or sex] was a motivating factor in the employer's action.'"  *Coleman v. ARC Auto, Inc.,* 255 Fed. Appx. 948, 951 n.2 (6th Cir. 2007) (quoting *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003)).  To establish a claim through circumstantial evidence, a plaintiff must show that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified, and (4) was treated differently than similarly situated male employees.  *Id.* at 951.  Should the plaintiff meet her burden of establishing the *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  *McClain v. Northwest Cmty. Corr. Ctr. Judicial Corr. Bd.,* 440 F.3d 320, 332 (6th Cir. 2006).  If the defendant meets this burden, then the burden shifts back to the plaintiff to prove that defendant's reason was merely pretextual, by showing that the given reasons "'(1) had no basis in fact, (2) . . . did not actually motivate [the adverse action taken against her], or (3) . . . were insufficient to motivate [the adverse action taken against her].'"  *Id.* (quoting *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).

Under the adverse employment prong, a plaintiff must show that she experienced a materially adverse change in the terms and conditions of her employment.  *Coleman,* 255 Fed. Appx. at 332.  The Sixth Circuit has described a materially adverse change:

> [A] materially adverse change in the terms and conditions of
> employment must be more disruptive than a mere inconvenience or
> an alteration of job responsibilities.  A materially adverse change
> might be indicated by a termination of employment, a demotion

6

> evidenced by a decrease in wage or salary, a less distinguished
> title, a material loss of benefits, significantly diminished material
> responsibilities, or other indices that might be unique to a
> particular situation.

*Bowman v. Shawnee State Univ.,* 220 F.3d 456, 461-462 (6th Cir. 2000) (quoting *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir. 1999)).  Further, "non-selection for a position of employment is not always an adverse employment action.  In cases where the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action."  *Mitchell,* 389 F.3d at 183.

Failing to promote a qualified individual because he or she is a member of a protected class can be an adverse employment action.  To establish a *prima facie* claim of discrimination in the failure-to-promote context, a plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for promotion; (3) she was 'considered for and denied the promotion'; and (4) 'other employees of similar qualification who were not members of the protected class received promotions.'"  *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 585 (6th Cir. 2009) (quoting *Grizzell v. City of Columbus Div. of Police,* 461 F.3d 711, 719 (6th Cir. 2006)).

### 1. Failure to Promote

Plaintiff's sexual discrimination failure-to-promote claim arises primarily from circumstances surrounding plaintiff's eligibility to sit for a Civil Service examination for the rank of captain that was scheduled, rescheduled several times, and ultimately canceled.  According to the City ordinances, the Fire Department could have up to three captains.  (Johnson Depo. Tr. 56:18-21.)  In 2008, no firefighter held the rank of captain.  In January of 2008, Chief Johnson requested that a promotional examination be given by the Civil Service Commission for

7

the rank of full-time captain.  (Ex. 7.)  A year prior to Chief Johnson's request, he had a

conversation with plaintiff and the law director at the time, Chad Murdock, who indicated that

plaintiff would be eligible to take a promotional examination for captain, based on Murdock's

reading of the collective bargaining agreement provision 9.10.[4]  (Johnson Depo. Tr. 48:11-50:2.)

At some time after that conversation but also prior to Chief Johnson's request, a new law

director, David Benjamin, was appointed and formed a different opinion on plaintiff's eligibility

to take the exam, which he shared with Chief Johnson several months prior to formalizing his

opinion in a memo to Johnson.  (Id.; Ex. D.)  Benjamin's position was that plaintiff did not have

10 years of service to the Fire Department, and thus was ineligible to sit for the exam based on

the third sentence of the provision.  (Ex. D.)  Johnson's request indicated he was seeking one

full-time captain and that two people were eligible to take the promotional examination.  (Ex. 7;

Johnson Depo. Tr. 47:8-18.)  The two lieutenants that Johnson believed to be eligible were Don

Bobek and Rick Gray.  (Id. at 64:14-16.)  Don Bobek joined the Fire Department in 1985.  (Ex.

128.) Rick Gray joined the Fire Department in 1992.  (Gray Depo. Tr. 19:9-16.)  The Civil

Service Commission received applications for the promotional exam from plaintiff, Bobek, and

Gray.  (Yeager Depo. Tr. 71:9-11.)[5]

---

[4]       The provision reads:  "For employees hired prior to January 1, 2006,
candidates for promotion as officers shall be employed a minimum of 30 months in the
Streetsboro Fire Department full time division.  For employees hired on or after January 1,
2006, candidates for promotion to Lieutenant shall have a minimum of five (5) years service
full or part time with the Streetsboro Fire Department.  Candidates for Captain shall have a
minimum of ten (10) years service full or part time with the Streetsboro Fire Department.
Only Lieutenants are eligible to take a Captain test.  Appointment to said Officers [sic]
position shall be by competitive Civil Service Examination."  (Ex. C.)

[5]       Plaintiff produces testimony that Bobek was later determined to be ineligible
to take the exam in June, being a few months short of qualifying for the exam under the

8

The promotional exam was initially scheduled for April 17, 2008, then canceled and rescheduled several times, the last time to September 18, 2008.  (Exs. 10, 12-14, 27.)  While it is unclear from the facts alleged in the parties' briefs when plaintiff first became aware that questions had been raised as to her eligibility,[6] it appears to have been no later than April 24, 2008, when plaintiff appeared at a Civil Service Commission meeting to discuss her eligibility.

The exam was ultimately canceled by the mayor.[7]  (Ex. 58.)  On May 18, 2009, the City attempted to repeal the ordinance that called for three captains and to replace it with another that eliminated the rank of captain altogether.  (Ex. 65.)  Plaintiff alleges that the new ordinance was declared to be an unfair labor practice by the State Employee Relations Board.  Plaintiff further alleges that in the new collective bargaining agreement signed in December 2009, the January 1, 2006 cut-off language was deleted and language was inserted providing that a promotional examination for the rank of captain would be conducted when there were a minimum of 21 full-

---

provision requiring 30 months in full-time service.  (Demitrus Depo. Tr. 116:1-7.)  Bobek was a part-time firefighter prior to joining the full-time division. (Woolf Depo. Tr. 84:17-24).  The Civil Service Commission rescheduled the exam until September 18, 2008 for after Bobek was qualified.  (Ex. 27.)  Additionally, plaintiff produces testimony that Gray was also ineligible to take the exam because his application was not notarized as of June 24, 2008 .  Gloria Yeager, however, testified that the application was returned to Gray, who had it notarized and turned it in with sufficient time to be eligible to take the rescheduled promotional exam.  (Ex. 19; Yeager Depo. Tr. 72:1-6.)

[6]  The Court notes that the notices for the examinations state that the minimum qualifications for the rank of captain is 10 years' service with the Fire Department.

[7]  Plaintiff vigorously disputes the authority of Chief Johnson and the mayor to schedule, reschedule, and cancel promotional exams and argues that the authority resides in the Civil Service Commission.  The Court, however, finds that these arguments have no bearing on plaintiff's failure-to-promote claim and thus finds it unnecessary to address them.

9

time firefighters, which the Fire Department currently does not have.[8]

Defendants argue that plaintiff's allegations regarding her inability to sit for the examination do not show a materially adverse action because no legal vacancy existed, as there was no funding for the captain positions, no individual ever sat for the test, and plaintiff's application was never rejected by the Civil Service Commission.  Defendants also argue that plaintiff was not qualified to sit for the examination, and that even if she had been qualified, planning or threatening to prevent her from taking the examination is not enough to show adverse employment action where the exam was canceled and no other lieutenants had the opportunity to take the exam.  Defendants argue that at the time the promotional exam for the rank of captain was posted, plaintiff was not eligible to take the exam according to the law director's interpretation of provision 9.10 of the collective bargaining agreement.  Defendants produce a memorandum from the law director to Chief Johnson advising him that under provision 9.10, candidates for captain must have at least 10 years of service in the Fire Department.  (Ex. D.)[9]

Plaintiff responds that the denial of her promotion and the denial of even the opportunity to take the exam were directly motivated by sex animus.  In support, she cites to the testimony of

_____

[8]     Plaintiff does not provide citations to the record to support the allegations regarding the unfair labor practice or the new collective bargaining agreement.

[9]     Defendants also argue that plaintiff's eligibility to take the promotional exam has been finally determined, as plaintiff filed a grievance and the union did not pursue arbitration of the grievance.  The Court notes that neither party has produced the entire collective bargaining agreement or any records relating to a grievance filed by plaintiff in this matter, with the exception of Exhibit 110, a memo written by plaintiff apparently for her own use, which does not describe the grievance, the procedure followed, or the outcome.

former Commissioner Dye, who testified that Chief Johnson told him, "[w]ell, I really don't want to see a woman in that position," (Dye Depo. Tr. 73), and that of former Commissioner Demitrus, who testified that Chief Johnson said "I don't want her to take the test" (Demitrus Depo. Tr. 11).  Plaintiff further cites to testimony of former Mayor Wagner, stating that Johnson was in complete control of the Fire Department and fully supported by the mayor.  (Wagner Depo. Tr. 48-49.)   Plaintiff also argues that she establishes a *prima facie* case of discrimination through circumstantial evidence as well, because where the cancellation and unfunding of an examination is motivated at least in part by sexual animus, it is actionable discrimination. Plaintiff further argues that she was qualified for the promotion because she was hired full-time in 2003 and had the requisite 30 months in full-time service required by the applicable collective bargaining agreement to be eligible for promotion in 2008.  In support, she cites to provision 9.10 of the collective bargaining agreement (Ex. C).  She further argues that Chief Johnson told her over a year before he requested a promotional exam that she would be eligible to take it, and also cites to the testimony of former Commissioner Demitrus, Kevin Grimm, and former Mayor Wagner as agreeing with her interpretation.[10]  Plaintiff also argues that provision 9.10 is ambiguous, thus the question of what it means should go to the jury.

Defendants reply that plaintiff has introduced no evidence that the captain positions were actually available, and that the final determination was that plaintiff was not eligible to sit for the exam thus any decision not to have the examination could not have been adverse to her.

---

[10]      Plaintiff also argues in connection with her eligibility to take the exam that Gray's promotion to lieutenant was illegal and that a question exists as to whether Bobek was legitimately a full-time firefighter.  These issues, however, do not impact *plaintiff's* own eligibility under the collective bargaining agreement to take the exam.

Defendants also argue that the exam was postponed for a number of reasons and ultimately canceled after it was determined there was no funding for the positions.

Upon review, the Court finds that upon these specific facts, even when taken in the light most favorable to plaintiff, plaintiff has not shown any adverse employment action.  Plaintiff has not established a *prima facie* case under *Upshaw.*  Plaintiff cannot establish that other similarly situated employees who are not members of the protected class received promotions.  According to the evidence, Lieutenant Gray and Lieutenant Bobek, both males, also applied to take the promotional examination.  These candidates were considered to be qualified at least by the rescheduled examination date of September 18, 2008.  (Ex. 27.)  All of the evidence establishes that neither lieutenant has taken an examination for promotion to captain and that no one has been promoted to captain.

Plaintiff cites to two cases in support of her argument that cancellation of an examination, motivated in part by sex animus, is actionable discrimination.  These cases are distinguishable.  In *Fulford v. CONRAIL,* No. 86-3075, 1987 U.S. App. LEXIS 3191 (6th Cir. March 10, 1987), the employer posted a job position for which the plaintiff, an African-American male, submitted a bid, but that was ultimately offered to a white male who rejected the position.  The position was then canceled.  The employer posted the job again, the plaintiff again submitted a bid, and the job was again awarded to a white male, who declined the job.  The job was then offered to another white man, and plaintiff was furloughed.  *Id.* at 5-7.  The Sixth Circuit affirmed the district court's finding that the employer's explanation as to why the job was not offered to the plaintiff was not a legitimate explanation.  *Id.* at 15-17.  This case is different from the case at hand because the district "court found the plaintiff had succeeded in establishing

12

a prima facie case of discrimination; i.e., membership in a protected class, rejection for the position despite being qualified and having properly applied, and subsequent attempts by the employer to fill the same position with comparably qualified persons." *Id.* at 14-15.  In this case, the captain's position was not offered to any lieutenant, thus plaintiff has not established a *prima facie* case.

In *Vincent v. Dept. of Transp. & Dev.,* No. 94-3969 § C(2), 1996 U.S. Dist. LEXIS 468 (E.D. La. Jan. 17, 1996), the employer posted a position for which the plaintiff, an African-American woman, applied.  She was informed that she was selected for the position and her letter of promotion would be forthcoming.  Instead, the position vacancy was canceled and a new notice of vacancy was posted the next day, for which the plaintiff was told she would have to reapply.  She reapplied and then received a letter stating that the position would not be filled due to recent administrative changes.  *Id.* at *3.  The position, in fact, had been reallocated to a different job category for which the plaintiff was not qualified and was filled by a white male. The court found in this case that the plaintiff had established a *prima facie* case that gave rise to an inference of discrimination.  *Id.* at *7.  Specifically the court found that these facts did not fit squarely within *McDonnell-Douglas* because the position was reclassified and applicants with the plaintiff's qualifications were no longer sought, but the court found the plaintiff's explanation that it was to prevent an African-American from being promoted to be credible.  *Id.* at *7-8.  Again, however, *Vincent* differs from the case at hand because the job in question was ultimately filled, while in this case no one received a promotion.  Accordingly, the Court finds that plaintiff has not established that other employees of similar qualification who were not members of the protected class received promotions.

13

## 2.      Other Adverse Employment Actions

Defendants argue that plaintiff has failed to identify any other adverse employment action taken against her by defendants.  Defendants argue that plaintiff's allegations of insubordination from the firefighters under her command do not rise to the level of taking away her title, reducing her access to resources, transferring her to another department, or reassigning her job duties.  Defendants also argue that being "shunned or ostracized" does not constitute an adverse employment action.

Plaintiff responds that she suffered adverse actions in the following ways:  she was harassed based on her sex; subject to a hostile working environment; subject to insubordination charges where other lieutenants were not; ignored by the entire Fire Department as well as the entire City administration when she made reports and complaints; treated less favorably than Lieutenant Gray because she was denied the opportunity to act as the Chief of the Fire Department in Chief Johnson's absence and also the pay to which she should have been entitled in so acting; denied an appropriate-fitting dive suit and the ability to dive; denied transfer to the Fire Prevention Bureau in 2006; subjected to general discrimination and hostility throughout her career; denied overtime when male firefighters were not; and was disciplined for infractions that male officers were not.  She further states that she was forced from the Training Division due to Fire Department actions and omissions.

Defendants reply that plaintiff's allegations of discrimination and harassment are separate claims and not adverse employment actions, and that co-worker hostility does not support a claim of discrimination.  Defendants also argue that the verbal reprimand cited by plaintiff as evidence of unequal disciplinary enforcement is insufficient to support an adverse employment

14

action and that plaintiff failed to mention that a male lieutenant received an identical verbal reprimand at the same time.  Defendants argue that plaintiff's allegations of being ignored by the entire Fire Department and the City administration whenever she made reports or complaints are unsubstantiated by evidence.

As to plaintiff's argument that she was denied the opportunity to act as Chief in Chief Johnson's absence, defendants reply that the officer who is Acting Chief in the Chief's absence is the most senior officer except for the Chief.  Lieutenant Gray is the most senior officer. Defendants argue that plaintiff's argument that Lieutenant Gray was "illegally" promoted to lieutenant does not show an adverse employment action because Lieutenant Gray was promoted prior to plaintiff being hired by the City and nearly four years prior to plaintiff being promoted to lieutenant.

Defendants argue that the delay in replacing plaintiff's dive suit occurred as a result of Chief Johnson's belief that plaintiff was still capable of performing her duties in her old suit. Additionally, although plaintiff asserts she was denied the right to dive, defendant argues she identified only one incident where she was not permitted to go on a dive call, but no actual diving occurred that day and the Chief permitted her to go with the dive team on the following day.

Defendants argue that the denial of plaintiff's transfer to the Fire Prevention Bureau in 2006 is not an adverse employment action because there was no loss of pay, benefits, or standing.  Defendants also point out that plaintiff testified that she did not believe she was denied the transfer because of her gender, but because she was a lieutenant.  Defendants also argue that plaintiff's allegations that she was denied overtime even though male employees were not denied

15

overtime are not supported by the evidence plaintiff cites in her opposition brief.  Finally, defendants argue that plaintiff voluntarily resigned her position as training officer, and produced no evidence that she lost pay, benefits, or any status by doing so, thus it was not an adverse employment action.

Upon review, the Court finds that the additional actions plaintiff alleges do not rise to the level of adverse employment actions as required to establish a sex discrimination claim.  As an initial matter, plaintiff's allegations that she was treated less favorably than her counterparts because she was harassed based on her sex, subjected to a hostile working environment, subject to insubordination charges where others were not, and that her reports and complaints were ignored by the Fire Department and the City administration, without showing a material change in employment circumstances, are not sufficient to establish an adverse action for her sex discrimination claim.  Her allegations of harassment and hostile work environment are more properly addressed in conjunction with the Court's analysis of those claims in § B of this Memorandum.

Plaintiff alleges that she was subject to an adverse employment action because she was denied the opportunity to act as Acting Chief and also the concomitant pay.  Plaintiff does not cite to the record to support these statements.  Taking the facts in the light most favorable to plaintiff, the Court finds that this was not an adverse employment action.  It is undisputed that the officer who acts as Acting Chief in the Chief's absences is the most senior officer.  The evidence shows that at all times, Lieutenant Gray was the most senior officer.  Plaintiff disputes this and asserts that Gray was promoted off of an expired eligibility list before plaintiff was even hired.  Even if this is true, Gray's promotion cannot have resulted in a material change in

16

employment circumstances to plaintiff, because plaintiff was not yet employed as a firefighter and it was well before she was promoted to lieutenant.  *See Allen v. Michigan Dept. of Corr.,* 165 F.3d 405, 409-10 (6th Cir. 1999).

Plaintiff also alleges that she was subject to an adverse employment action because she was forced from the Training Division due to Fire Department actions and omissions.  Plaintiff has not supported her contention with citations to the record.  Upon review, however, the Court finds that plaintiff's resignation from the Training Division was voluntary and is not an adverse employment action.  (Woolf Depo. Tr. 343:7-19; Johnson Depo. Tr. 163:5-11.)  Plaintiff has neither argued nor established that her resignation was a constructive discharge pursuant to *Yates v. Avco Corp.,* 819 F.2d 630, 636-637 (6th Cir. 1987) (holding that constructive discharge is partially a question of law and that "[a] finding of constructive discharge in this circuit requires an inquiry into both the objective feelings of an employee, and the intent of the employer.  A constructive discharge exists if 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" (quoting *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir. 1982))).  Additionally, plaintiff produces no evidence that she suffered termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities by resigning from the Training Division.

Plaintiff also alleges that she was subject to an adverse employment action because she was denied a properly fitting dive suit and was denied opportunities to dive.  Plaintiff provides no citations to the record, except to her declaration made subsequent to her deposition.  Upon review, the Court finds that even taking the facts in the light most favorable to plaintiff, plaintiff

has not established an adverse employment action.  In her declaration, plaintiff asserts that because she had an ill-fitting suit, she was precluded from maintaining her skills as a diver and has lost her dive rescue certification because she could not attend training dives.  The record reflects that plaintiff made a request for training to be recertified as a rescue diver on April 28, 2008.  The record also reflects that Chief Johnson approved the request.  (Ex. 104.)  This evidence is simply not enough for a jury to find that plaintiff was denied opportunities to dive and was denied an appropriately-fitting suit.[11]

Plaintiff also alleges that she was subject to an adverse employment action due to the denial of her 2006 request to be transferred to the Fire Prevention Bureau.  Upon review, the Court finds that this was not an adverse employment action.  Although plaintiff alleges that the position was given to a lesser-qualified male, plaintiff has not established that she suffered any loss of pay, benefits, title, or job responsibilities as a result of being denied the transfer.  (Woolf Depo. Tr. 294:23-295:22.)  In her deposition, plaintiff characterizes this transfer as a promotion because of the work schedule change (Id. at 281:4-17), but admits the pay would be no different (Id. at 294:23-295:1).[12]  An employee's subjective view of a transfer is not sufficient to render its denial an adverse employment action.  *Momah v. Dominguez,* 239 Fed. Appx. 114, 123 (6th Cir. 2007).

---

[11]     The record also reflects that the City ordered a new dive suit for plaintiff that was ready in March 2010 (Woolf Depo. Tr. 48:7-10).  It is unclear when the suit was ordered, or what suit plaintiff used to attend the dive training she requested or whether she attended the dive training at all.

[12]     The only other evidence cited by plaintiff actually refers to plaintiff declining a Fire Prevention position when it was offered to her in 2009, and thus does not establish that she suffered an adverse employment action as a result of being denied a transfer in 2006. (See Ex. 102.)

Finally, plaintiff alleges that she was subject to an adverse employment action when she was denied overtime when male firefighters and officers were not.  Upon review, the Court finds that taking the facts in the light most favorable to plaintiff, plaintiff has not established an adverse employment action.  The evidence cited by plaintiff utterly fails to support plaintiff's argument.  Exhibit 96 consists of forms entitled "Application or Certification for Time Off Request Kelly Days, Vacation, and Comp. Time/Personal Time."  The forms show that on May 2, 2008, plaintiff was initially denied compensatory time because it would create overtime, but that the compensatory time was ultimately approved when it was determined it would not create overtime.  Also included in Exhibit 96 is a form reflecting that on June 23, 2008, Brian Novotny's request for personal time was approved.  Exhibit 97 appears to be simply a statement or memo dated June 28, 2008, apparently written by plaintiff though it is not signed nor addressed to anyone in particular, describing that she was denied compensatory time on May 9 because it would cause overtime, while overtime was incurred to cover the compensatory time requests of two other firefighters.  No supporting documentation is attached.  These exhibits appear to relate to compensatory and personal time, and thus do not support plaintiff's argument that she was denied overtime.  Plaintiff's deposition establishes that she was offered overtime and chose not to take it.  (Woolf Depo. Tr. 52:20-55:24.)

### 3.    Pretext

Even assuming that plaintiff could establish a prima facie case, defendants have offered a legitimate, nondiscriminatory reason for not giving the examination:  no legal vacancy actually existed because no funding was ever allocated to pay for the position of captain.  Chief Johnson testified that although a city ordinance required him to promote an individual or individuals

19

within 10 days of administering a promotional exam, he would have to get funding in order to carry out the promotions.  He testified that although both he and the mayor had the opinion that they could get the position funded, the decision ultimately rested with City Council, and the Council never funded those positions.  (Johnson Depo. Tr. 54:5-60:25; 81:13-15.)  Plaintiff cannot establish that this reason is pretextual.

Plaintiff relies on the testimony of former Commissioner Demitrus, Kevin Grimm, former Mayor Wagner, and former Commissioner Dye to establish that funding existed for all three captain positions.  Demitrus did testify that the positions were funded (Demitrus Depo. Tr. 12:12-13), but also testified that it was his assumption that the positions were funded as it was not the responsibility of the Civil Service Commission to worry about the funding, and that "it's only up to us not to look into what City Council and the Mayor determines in the budget, but to execute their request" (Id. at 12:15-25).  He further testified that the Civil Service Commission "really didn't get involved with [funding]."  (Id. at 19:23-24.)

Kevin Grimm testified that he never knew the City to give a promotional exam where the position was not funded (Grimm Depo. Tr. 12:1-8), but he was testifying about the Assistant Chief promotional exam that took place in 2007, the City Council's veto of legislation allowing that promotion to take place, and the City Council pulling the funding for that position, not the promotional exam for captain.  (Id. at 12:9-12.)  He offered no testimony about his familiarity with funding of positions.  Further, Grimm testified that he did not know why the promotional exam for captain was postponed.  (Id. at 46:7-11.)

Former Mayor Wagner's testimony also does not establish that funding existed for the positions.  He testified that he did not know whether the positions were funded, that he could go

20

to City Council after the exam was administered to try to get funding, and that he assumed the positions were funded.  (Wagner Depo. Tr. 31:7-32:11.)  Finally, plaintiff cites to the testimony of former Commissioner Dye, who testified only that funding should have been almost automatic for the position.  (Dye Depo. Tr. 61:15-17.)[13]  Based on the evidence cited by plaintiff, a reasonable jury could not find that the vacancy for captain was funded and actually existed.

Accordingly, defendants' motion for summary judgment on plaintiff's state and federal sexual discrimination claims is granted.

### B.    Hostile Work Environment

Under Title VII, an employee alleging a hostile work environment based on sexual harassment must show the following: (1) the employee was a member of a protected class, (2) the employee was subjected to unwelcome sexual harassment, (3) the harassment complained of was based on sex, (4) the charged sexual harassment created a hostile working environment and (5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999).  *See also Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir.1999).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys.*, *Inc.,* 510 U.S. 17, 21 (1993) (internal quotation and citation omitted).  Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person

---

[13]    The Court notes that plaintiff's characterization of this testimony as establishing that funding existed contradicts Dye's testimony that he saw the budget and that funding did not in fact exist for this position.  (Dye Depo. Tr. 38:17-40:13.)

and the actual victim.  *Id.* at 21-22.

The fifth element of the five-part showing, employer liability, differs depending upon the identity of the alleged harasser, with a distinction drawn between co-worker harassment and harassment perpetrated by a supervisor.  *Nievaard v. City of Ann Arbor,* 124 Fed. Appx. 948, 953 (6th Cir. 2005).  In this case, plaintiff appears to assert both co-worker harassment and supervisor harassment.  Defendants cannot be held liable with respect to co-worker harassment unless they knew or should have known of the charged sexual harassment and failed to implement prompt and corrective action.  *Rudd v. Shelby County*, 166 Fed. Appx. 777 (6th Cir. 2006).  The "employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.  If the employer responds in good faith, it cannot be held liable."  *Id.*  In the case of supervisor harassment, "the employer must demonstrate that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and . . . that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."  *Nievaard,* 124 Fed. Appx. at 953 (internal citations and quotations omitted).

Defendants argue that plaintiff has not met the fourth element because she has not demonstrated that a reasonable person would share her subjective interpretation that the actions of her co-workers and supervisors created a hostile work environment.  Defendants further argue that the majority of plaintiff's allegations of sexual harassment actually involve actions by plaintiff's co-workers that plaintiff found to be insubordinate, but that plaintiff never disciplined her subordinates because she feared they would think she was picking on them.  Defendants also argue that in the rare instances where comments were made regarding gender, such comments

22

were relatively benign, spaced out over the course of plaintiff's employment, and did not rise to the level of severe and pervasive enough to sustain a claim of hostile work environment.  Finally, defendants argue that plaintiff cannot show that any of the conduct and speech that she cites as contributing to a hostile work environment was motivated by gender bias as opposed to a dislike of plaintiff personally or a lack of respect due to her failure to discipline her crew members.

Plaintiff argues initially that defendants' analysis is incorrect, as defendants refer to the fourth prong of the test as requiring severe *and* pervasive harassment, when the law requires that the harassment be severe *or* pervasive.  Plaintiff argues that whether conduct was severe or pervasive is a question of fact.  Plaintiff further argues that defendants cannot escape liability by arguing that acts or comments are far removed in time.  Plaintiff points to the allegedly adverse actions that she has suffered over her time of employment at the Fire Department:  she was denied payment and duties as the Acting Chief; she was denied overtime; she was denied her choice of shifts in favor of a male; she was forced to lose her diving certification because the Fire Department would not give her a suit that fit; she has lost work and sick time due to environmental stress; she was denied a transfer to the Fire Prevention Bureau in 2006 in favor of a male; and she was denied a promotion to captain.  Plaintiff states that she made numerous complaints about the harassment and discrimination, which the mayor had a duty to investigate but did not.  Plaintiff also points to her declaration as evidence that other women suffered harassment, and that it was the entire atmosphere at the Fire Department and the City that was hostile towards women.  Finally, plaintiff argues that she was not permitted to discipline her

subordinates.[14]

Defendants reply that plaintiff has not produced any evidence that any of the adverse actions she alleges that she has suffered over the years were based upon her gender.

Upon review, taking the facts in light most favorable to plaintiff, the Court finds that plaintiff has failed to show sexual harassment because she has failed to show that the actions she alleges were directed against her were motivated by her gender or that such actions constituted a hostile work environment.  Although defendants do not address the numerous facts that plaintiff sets forth in the facts section of her opposition brief pertaining to the environment at the Fire Department, and indeed, plaintiff herself refers to such facts in her argument only in passing if at all, the Court finds that these facts are relevant to fully consider plaintiff's sexual harassment claims.  The Court thus addresses these facts prior to addressing the adverse actions that plaintiff claims constitute sexual harassment.

Plaintiff sets forth a number of incidents that she claims created a hostile working environment.  Some of these incidents involve the use of profanity toward plaintiff.  She states that when she gave orders to subordinates, she was ignored or told to "f... off," and cites to her amended EEOC complaint in support (Ex. 129.)   Similarly, she alleges, and cites to her declaration in support, that she was told by a superior in the presence of another superior to "f...ing think with your brain before opening your mouth."  Additionally, she complains that at one point she paged a subordinate to respond to a call and he became irate, yelling at her "why the f... am I on the squad?"  Plaintiff, however, cites to no evidence showing that these

---

[14]    Plaintiff also attempts to counter an affirmative defense that defendants have not pleaded, thus the Court finds it unnecessary to address it here.

comments were motivated by her gender.

She also alleges that she complained to Chief Johnson many times about the harassment and insubordination of her male subordinates, but was entirely ignored. In support, she cites to her declaration, her amended EEOC complaint, her deposition testimony, and a letter she wrote to Chief Johnson. This evidence collectively shows plaintiff's frustration at her subordinates' insubordination, but provides no evidence that the insubordination was motivated by her gender. In fact, plaintiff's letter to Chief Johnson states that "I am being harassed due to the fact that I have no control or power over the group to allow me to due [sic] my job as lieutenant and they get away with the harassment because they are allowed to." She further states that "I have tried to hold people accountable but I am unable to write them up because they say I am picking on them, or I am out to get them." (Ex. 100.) At no point in the cited evidence does plaintiff show that the insubordination occurred because she is female. As to plaintiff's allegations that she complained numerous times not only to Chief Johnson, but to the mayor, the Civil Service Commission, and City Council, she cites only to her declaration which does not provide any detail as to these allegedly numerous complaints.

Plaintiff also appears to allege that Mayor Wagner, Lieutenant Rick Gray, and Law Director David Benjamin contributed to the hostile work environment, but the evidence cited does not show actions toward plaintiff that were motivated by gender. The evidence that she cites as to Wagner relates to Wagner's harassment of other women in other departments. Although plaintiff states in a conclusory fashion that the misfeasance and nonfeasance for which Wagner was ultimately charged by the Civil Service Commission "were clearly connected with his actions (and inaction) towards women, including Woolf," the evidence cited by plaintiff does

25

not mention plaintiff.  (Wagner Depo. Tr. 7-10.)  Similarly, the evidence relating to Lieutenant

Rick Gray involves another woman, Deb Lucas, and appears to pertain to job-related conflicts

such as rate of pay and a dispute over computer passwords.  (Exs. 74, 76, 118-122.)  The

evidence relating to David Benjamin shows that he referred to plaintiff as a "cry baby" in

relation to the captain's examination that ultimately did not take place.  (Dye Depo. Tr. 50.)

Several facts alleged by plaintiff do involve gender-specific comments and

circumstances.  The Court finds, however, that these are not enough to show a hostile working

environment.  Plaintiff claims that she was told by Ty Marlin that Captain Broska said "women

don't belong in the fire service."  (Woolf Depo. Tr. 46:14-18.)  Plaintiff, however, also testified

that this comment came on the heels of a debate that she engaged in with Captain Broska

regarding women in the fire service.  (Id. at 46:5-11.)  Plaintiff made a point of testifying, "This

was not an argument, it was a debate."  (Id. at 46:11-12.)  Plaintiff also claims that her mentor,

Billy Martin, told her "they don't want females here."  (Id. at 14:24-25.)  Plaintiff characterizes

this as giving her a "heads-up" and stated that she did not feel it was a discriminatory act.  (Id. at

14:25-15:2.)  Thus these particular comments do not appear to meet even the subjective test for a

hostile work environment.

Plaintiff also claims that she was told, "Watch your butt, they don't want a woman to be

Lieutenant" and "there were a lot of people who want your badge."  The cited testimony,

however, actually reads:  "And he [Aaron Coates, a police officer] states that I should watch my

back because there are a lot of people on the Fire Department who want to get my badge. . . . I

said to him, 'What do you mean by that?' And he said, 'Because they don't want you to be

Lieutenant.'"  (Id. at 149:11-18.)  She then testified that this incident was sexual harassment

26

because "they are hostile towards me because they do not want me to be a Lieutenant there."
(Id. at 150:2-5.)  Plaintiff claims she was told that "girls can't drive" fire apparatus, but the cited
evidence actually reads "a male co-worker who was hired at the same time I was, Thomas
Plunkett, began making comments before other firefighters about my driving abilities . . . ."
(Woolf Decl. ¶ 27.)  Thus, the gender-specific references that plaintiff alleges in her brief in
opposition are not reflected in the actual evidence cited by plaintiff.

Plaintiff also claims she was subject to "numerous comments from Captain Broska that
women can't handle fire service and they don't belong in the fire service."  (Id. at 61:23-25.)
Without more specificity, however, the Court cannot conclude that a reasonable jury could find
that such comments affected a term, condition, or privilege of the workplace such that it
constituted harassment sufficiently severe or pervasive enough to alter the conditions of
plaintiff's employment and create an abusive working environment.  *Black v. Zaring Homes,* 104
F.3d 822, 825 (6th Cir. 1997).  This is especially so in light of plaintiff's testimony that Captain
Broska voluntarily switched shifts in 2005 after plaintiff complained to Chief Johnson that she
could not work with him any longer.  (Woolf Depo. Tr. 72:15-19.)

Plaintiff also alleges that the locker room she was given when she was hired was inferior
to that used by male employees because it did not have working showers, the lock did not work,
it had no electrical outlets, was used for storage of bedding for male firefighters, and that the
male firefighters used this locker room for playing video games and chewing tobacco.  (Woolf
Decl. ¶ 21-25.)  Plaintiff alleges that she complained to Chief Johnson about the conditions, but
that the situation was not remedied until she filed her EEOC claim in 2008.  Plaintiff, however,
does not specify when she complained to Chief Johnson, nor does she argue or explain how the

locker room contributed to a hostile working environment.[15]

As to the adverse employment actions she alleges were taken against her, many of these are identical to the actions plaintiff identified as the bases of her sexual discrimination claims. Plaintiff provides no additional evidence or argument showing that these actions were actually either adverse to plaintiff or motivated by plaintiff's gender. Accordingly, the Court will not further consider plaintiff's arguments relating to the denial of Acting Chief's duties and pay; denial of overtime; denial of a dive suit; denial of a transfer to Fire Prevention in 2006; and the circumstances surrounding plaintiff's failure to promote claim. Plaintiff also alleges that she was denied her choice of shifts in favor of a male, even though she was the highest ranking lieutenant on the exam. (Woolf Decl. ¶ 37-38.) Plaintiff, however, provides no evidence that she was denied her choice of shifts because she was a woman.

Accordingly, defendants' motion is granted as to plaintiff's sexual harassment and hostile work environment claims.

## C.    Retaliation and Retaliatory Harassment

To establish a claim of retaliation, a plaintiff must show the following elements: (1) that she engaged in a protected activity; (2) that her employer knew of her exercise of protected rights; (3) that she was the subject of an adverse employment action; and (4) that there was a causal link between the protected activity and the adverse employment action. *Balmer v. H.C.A.,*

---

[15]    Plaintiff also attempts to rely on Exhibit 77, a letter written by Deb Lucas detailing incidents primarily between Lucas and Gray, to establish her hostile work environment claim. Defendants argue that Exhibit 77 is not proper summary judgment evidence because it is unauthenticated, unsigned, and was not made under penalty of perjury. Even if the Court found that Exhibit 77 was proper summary judgment evidence, it is largely irrelevant to establishing the elements of plaintiff's hostile work environment claim, as it does not show that plaintiff was subjected to unwelcome sexual harassment.

*Inc.,* 423 F.3d 606, 614 (6th Cir. 2005).

Defendants argue that plaintiff's retaliation and retaliatory harassment claims fail because she suffered no adverse employment action, and that even if she could show she suffered an adverse employment action she has provided no evidence of a causal link between any protected activity and any action on the part of defendants.

Plaintiff argues that she has pointed to numerous adverse employment actions in connection with her sexual discrimination and hostile work environment claims. She further claims that she has been "subjected to serious material retaliation and is even now avoided by other female City workers for their fear of retaliation for associating with her." Plaintiff finally argues that the retaliatory harassment is an adverse action because it is severe or pervasive and has been going on for years.

Defendants reply that plaintiff has not provided any connection between the alleged retaliation or retaliatory harassment and her engagement in a protected activity. Defendants further argue that plaintiff may not rely upon the actions which form the basis of her harassment claims, because she must prove not that the actions were motivated by her gender but that they were motivated by her engagement in a protected activity.

Upon review, the Court finds that taking the facts in the light most favorable to plaintiff, plaintiff has not provided evidence upon which a reasonable jury could find that she suffered retaliation or retaliatory harassment. The Court has already determined that plaintiff has suffered no adverse employment actions. Additionally, plaintiff's brief and her complaint are essentially

devoid of any causal connection linking any alleged adverse action to any protected activity.[16] Accordingly, defendants' motion as to plaintiff's retaliation and retaliatory harassment claims is granted.

**D.      Aiding and Abetting Sexual Harassment**

As plaintiff has not established the elements of her sexual discrimination and sexual harassment claims, her claim for aiding and abetting sexual harassment under Ohio law also fails. Plaintiff's brief does not oppose defendants' motion for summary judgment on this claim. Accordingly, defendants' motion as to plaintiff's aiding and abetting claim is granted.

**E.      Equal Protection**

To succeed on a claim under 42 U.S.C. § 1983 based on the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that her employer made an adverse employment decision with discriminatory intent and purpose. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003). For the reasons set forth above, plaintiff has not shown that defendants made any adverse employment decisions with discriminatory intent and purpose with respect to plaintiff, thus plaintiff's equal protection claim fails. Accordingly, defendants' motion for summary judgment on this claim is granted.

**F.      First Amendment Retaliation**

To succeed on a claim under 42 U.S.C. § 1983 based on the First Amendment, a plaintiff

---

[16]     In connection with her sex discrimination claim, plaintiff alleges that after she appeared at the Civil Service Commission meeting to discuss her eligibility to take the promotional exam, she was reprimanded the next shift by Chief Johnson for her crew not being properly groomed and the weights in the weight room not being put away. (Ex. 106.) This fails to establish any causal link, however, because the record shows that other employees were disciplined for the same offenses at the same time. (Ex. 127.)

must show that (1) she engaged in protected speech; (2) an adverse action was taken against her
that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3)
the adverse action was motivated at least in part by the protected speech.  *Thaddeus-X v. Blatter,*
175 F.3d 378, 394 (6th Cir. 1999.)  As set forth in the discussion of plaintiff's retaliation and
retaliatory harassment claims above, plaintiff has not established an adverse employment action,
nor has she demonstrated any causal connection between any protected speech and the actions
that she alleged were adverse.  Accordingly, defendants' motion for summary judgment on
plaintiff's First Amendment retaliation claim is granted.

**G.**     **Writ of Mandamus and Declaratory Judgment of Eligibility**

         A writ of mandamus  is a "drastic remedy," to be issued only where "a party seeking such
a writ [can] satisfy two conditions: (1) that there are no other adequate means for the party to
obtain the desired relief, and (2) that the party has a 'clear and indisputable' right to issuance of
the writ."  *Golden v. Kelsey-Hayes Co.,* 73 F.3d 648, 658 (6th Cir. 1996) (quoting *In re
Mechem,* 880 F.2d 872, 874 (6th Cir. 1989)).

         Defendants argue that there is no clear legal duty for the City to fill the captains'
positions because the positions are not deemed vacant until they are funded, and the positions are
not funded.  Additionally, defendants argue that the collective bargaining agreement has changed
and now requires a certain number of firefighters to trigger the opening of the captains'
positions, that number has not been reached, and therefore no position exists.

         Plaintiff responds that whether the positions are funded is a genuine issue of material
fact, and cites to the testimony of James Demitrus, former Civil Service Commissioner, who
testified that the positions were funded.  Plaintiff further argues that the new collective

31

bargaining agreement, to the extent it would apply to plaintiff at all, does not control promotions; it is the Civil Service Commission that controls promotions. Plaintiff also argues that if the Court finds that the collective bargaining agreement controls promotions, it is the old collective bargaining agreement that applies.

Defendants reply that Demitrus had no personal knowledge as to whether the positions were funded and admitted as much. Defendants further argue that plaintiff filed a grievance regarding the decision that she was ineligible to take the captain's examination and that the union chose not to pursue the grievance through arbitration, thus the law director's determination was binding and plaintiff cannot show that she has a right to issuance of the writ.

Upon review, the Court finds that plaintiff is not entitled to a writ of mandamus directing the City to hold the captain's examination. As an initial matter, the plaintiff has not provided any evidence or argument that she has no other adequate means for relief, such as whether her collective bargaining agreement provides grievance procedures, whether she has availed herself of them, and whether such procedures are an adequate remedy at law.[17] The Court also finds that plaintiff has not introduced evidence such that a reasonable jury could find that the captain's positions are funded, even assuming that plaintiff could show she is eligible to take the examination. Plaintiff cites only to the testimony of former Commissioner Demitrus, who testified that he assumed the position was funded but that funding was not the responsibility of the Civil Service Commission and that the Civil Service Commission did not look into the

---

[17]     *See State ex rel. Johnson v. Cleveland Heights/University Heights Sch. Dist. Bd. of Ed.,* 652 N.E.2d 750 (Ohio 1995) (affirming the appeals court's denial of a request for writ of mandamus "primarily because it found the collective bargaining agreement's grievance procedure culminating in binding arbitration was an adequate remedy at law").

budget when they executed requests.  (Demitrus Depo. Tr. 12:12-13:2.)  This testimony is not enough to raise a genuine issue of material fact that the positions were funded, especially in light of the testimony of former Commissioner Dye, who testified that he saw the budget and the funding was not there.  (Dye Depo. Tr. 38:17-40:13.)  Chief Johnson also testified that the positions were not funded.  (Johnson Depo. Tr. 54:5-56:17.)  Where no funding for a position exists, the party seeking mandamus cannot show a clear legal right to issuance of the writ.  *State v. McKelvey,* 785 N.E.2d 759, 761 (Ohio Ct. App. 2003) (holding that where "there is absolutely no evidence of a lump sum appropriation of funds sufficient to cover the payroll of the department, let alone the rank of captain" police officer seeking writ of mandamus has not shown a vacancy to actually exist, and that "where a city council creates an additional position, a vacancy in that position requires either the appropriation of money therefor or the attempt to fill it").  It is undisputed that a captain's examination was never held and thus the City never attempted to fill the position, and plaintiff has not produced evidence sufficient to have raised a genuine issue of material fact as to whether the captain's position was funded and thus actually vacant.  Accordingly, defendants' motion for summary judgment on this issue is granted. Further, as plaintiff has not demonstrated that a captain's position vacancy exists for which she would be eligible, her request for a declaratory judgment resolving her eligibility to take a captain's examination is moot.

### **CONCLUSION**

For the reasons set forth above, defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/18/10